This is a termination of parental rights case.
Following an ore tenus hearing, the trial court ordered the permanent termination of all parental rights of the mother and father in Brandon Scott Mitchell, age three months. Permanent legal custody of the child was vested in the Alabama Department of Human Resources (Department).
Only the mother appeals, and we affirm.
The dispositive issue on appeal is whether there exists clear and convincing evidence which supports the trial court's decision to terminate the mother's parental rights.
It is well settled that the parents have a prima facie right to the custody of a child. However, the overriding consideration is always the best interests of the child. Brownv. Alabama Department of Pensions Security, 473 So.2d 533
(Ala.Civ.App. 1985). In determining the child's best interests, the court must consider whether a party to a custody proceeding is physically, financially, and mentally able to care for the child. Matter of Von Goyt, 461 So.2d 821
(Ala.Civ.App. 1984). The parental rights of the parents can then be terminated if the court finds from clear and convincing evidence that the parents are unable or unwilling to discharge their responsibilities to and for the child. Ala. Code (1975), §26-18-7(a) (1986 Repl.Vol.).
Additionally, we note that the determination made by the trial court following an ore tenus hearing is presumed correct and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. In theMatter of Moore, 470 So.2d 1269 (Ala.Civ.App. 1985).
In the present case there is clear and convincing evidence which supports the trial court's order.
Viewing the record with the attendant presumptions accorded the trial court's action, we find that the following is pertinently revealed:
A child was born to two minor parents, who were themselves dependent. The minor mother and father were not married and were residing in a foster care institution because of their own families' inabilities to properly care for them.
The minor mother, age sixteen, has been in the temporary custody of the Department since April 1977, i.e., since she was seven years old. She was placed in a foster *Page 649 
care institution in 1982 and has remained there intermittently until May 1986 when she was discharged due to her pregnancy. At this time she moved in with her mother (Mrs. Chandler). In June she entered a maternity home due to the family's inability to get along.
After the child was born, the Department filed a petition, alleging that the child was a dependent child in that the parent was unable to provide adequate care for the child. The trial judge entered a preadjudication removal order for the child, and the minor mother moved in with her mother (Mrs. Chandler).
The record further reveals that at the time of the hearing, the minor mother had been at home for three months and that this was the longest period of time that she had lived there in approximately five years. The minor mother testified that although her relationship with her mother (Mrs. Chandler) had been better in the last three months, it was still not particularly good. She testified that they had a "stormy relationship" and had "fussed and fought" with one another during this time. There was also testimony that the minor mother ran away once during this time. The maternal grandmother (Mrs. Chandler) also left home once.
Both the social worker and the maternal grandmother (Mrs. Chandler) testified that the minor mother was not capable of providing care for the child and certainly would not be able to do so without extensive help. Further, the child's guardianad litem testified that, in his opinion, it was in the child's best interests to be placed for adoption and for all parental rights to be terminated.
The evidence is clear that the minor mother is dependent and is not capable of supporting herself, much less of providing for the care and protection of the child. She has no place to go other than the questionable environment of her mother's (Mrs. Chandler's) home. She is in the ninth grade and testified that she would drop out of school if allowed to have custody of the child. She has no skills in order to hold a job, and it appears that she has no particular aim or plans for the future.
The record is also clear that the Department sought less drastic alternatives other than termination of parental rights. The record reveals that the minor mother had no place to go except possibly to her mother's (Mrs. Chandler's) home. Although the maternal grandmother (Mrs. Chandler) stated at the hearing that her daughter and the child could come and live with her, the evidence is that she has vacillated in that commitment several times. Further, the maternal grandmother (Mrs. Chandler) has previously lost the permanent custody of four of her eight children, and temporary custody of all but one child has been removed at some point. The only child whose custody has not been removed does not live with her.
In view of the maternal grandmother's (Mrs. Chandler's) record of rearing her own children and her relationship with the minor mother, we cannot say that the trial court erred in not placing the child in her home.
The record further reveals that all other attempts to place the child with other relatives were likewise unsuccessful. The evidence as to the unavailability of the father's family as a viable alternative was also clear and convincing.
In view of the above, there was clear and convincing evidence that the minor mother was not able to discharge her responsibilities to the child. Ala. Code (1975), § 26-18-7(a) (1986 Repl.Vol.). She was dependent herself and could not provide for the care, protection, and control of the child. Therefore, the trial court did not abuse its discretion in terminating the minor mother's parental rights.
This case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and INGRAM, J., concur. *Page 650